

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00213-CV

IN THE INTEREST OF D.A. AND
S.G., CHILDREN

----------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 325-548977-13

----------

## MEMORANDUM OPINION[1]

----------

Appellant R.T. (Mother) appeals the trial court's order terminating her parental rights to D.A. (Darcy) and S.G. (Stacy).[2]  In four issues, she contends that the evidence is legally insufficient to support the trial court's findings supporting termination.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]To protect the identity of the children, we use aliases.  *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8(b)(2).

## Background Facts

Mother gave birth to Darcy in 2010 and to Stacy in 2012. Darcy and Stacy have different fathers. In July 2014, the Department of Family and Protective Services (the Department) filed a petition asking for termination of Mother's parental rights to Darcy and Stacy if reunification could not be achieved. In the petition, the Department also sought the termination of the fathers' parental rights.

To the petition, the Department attached an affidavit. The affidavit stated that Mother had been diagnosed with a personality disorder,[3] that she was a long-time drug abuser, that she had recently picked up the children from a daycare facility while under the influence of methamphetamine, and that she had left with them from the daycare facility while they were not secured by seatbelts or car seats.

In response to the petition, the trial court signed an order in which it named the Department as the children's temporary sole managing conservator and authorized the Department to place the children with B.T., their maternal grandmother (Grandmother). Later, the court appointed Grandmother to be the children's possessory conservator while the Department's suit remained pending.

Denise Hamilton, a caseworker with the Department, became involved with Mother and the children in August 2014. According to Hamilton, the Department

---

[3]The evidence at trial established that Mother has been diagnosed as bipolar.

2

initially removed the children from Mother's custody (and placed them with Grandmother) because she had struck one of them during an altercation with one of their fathers and because she had some "drug history." Mother resisted the children's removal from her care, and police officers had to help the Department complete the removal.

Through a service plan, the Department instructed Mother to complete parenting classes; to take a drug-abuse assessment, which would determine whether she needed prolonged treatment; to be subject to random drug testing; to attend all scheduled visits with the children; and to participate in individual counseling. Hamilton reviewed these services with Mother, and Mother appeared to understand what the Department was asking her to do. But Hamilton did not believe at that time that Mother was willing to address the Department's concerns because Mother denied striking her child and denied any drug use.

Over the course of the case, the Department asked Mother approximately twenty-five times to submit to a drug test, and the trial court twice ordered drug testing, but she refused to take a drug test. Mother went to one session of individual counseling but did not go again.

The Department set up visitation between Mother and the children on a weekly basis at Mother's request, but she first visited with them several months after the Department had removed them from her care. After Mother's first visit with the children, she visited only occasionally, and she sometimes failed to

attend the visits without prior cancellation. When she did visit them, she sometimes became agitated and cursed in front of them because of her frustration with the Department.

In February 2015 and again in June 2015, the trial court signed an order in which the court stated that Mother had not adequately complied with the service plan. The Department's final service plan evaluation, which the Department filed with the court in May 2015, showed that Mother had not completed any services.

A bench trial occurred in July 2015. Mother had not visited with the children in more than a month before the trial. Although Mother spoke with Hamilton on the morning of the trial and stated that she would attend the trial, she did not do so. A week before the trial, she made a statement that she was "done with [Child Protective Services]," which Hamilton interpreted as meaning that Mother was not going to participate in any services or take Hamilton's calls. Mother also stated that she planned on taking the children away from Grandmother and leaving Texas.

Hamilton asked Mother, who was thirty years old at the time of trial, where she was living, and for months, Mother would not tell her. About a week before the trial, Mother gave Hamilton her address, but Hamilton did not visit Mother there because Mother told Hamilton that there was "no reason for [her] to come out." Mother never provided Hamilton with proof that Mother had a job.

Hamilton asked the trial court to terminate Mother's parental rights to the children because Mother had not visited with them and had not completed her

4

services and because Grandmother was prepared to adopt them. Since the children's removal from Mother's care, Hamilton visited Grandmother's home eleven or twelve times. Concerning Grandmother, Hamilton testified, "She [makes] sure [the children have] food [and] shelter. She takes them to day care. [Darcy] has neurological stuff going on. She takes her to the doctor to find out, you know, what [is] going on. [Darcy] needed new glasses. [Grandmother] makes sure that they have everything they [need]."

Grandmother was the only witness at trial other than Hamilton. She testified that she had been involved with Darcy (who was five years old at the time of the trial) and Stacy (who was two years old) throughout their lives. In fact, Grandmother explained that the children had been living with her by Mother's consent just before their removal from Mother's care but that Mother had picked them up at the daycare facility, had backed into Grandmother's truck, and had sped away with the children while they were not secured with seatbelts or car seats. Grandmother called the Department, and the Department removed the children from Mother's care soon thereafter.

Since then, Mother and Grandmother communicated with each other through text messaging, but Mother often threatened to "get the girls." Mother has attacked Grandmother twice. For example, in May 2014, Mother physically attacked Grandmother while Mother was holding Stacy. During the attack, Mother dropped Stacy. Although Stacy did not sustain physical injuries other than minor scratches, she became very afraid. Grandmother declined to ask for

5

Mother's criminal prosecution. The next morning, Mother again became upset, and she slapped and pushed Darcy. Mother admitted that she was using methamphetamine at that time, and Grandmother found drug paraphernalia in Mother's car.

According to Grandmother, when Mother uses methamphetamine, she becomes antsy, angry, and vulgar. Grandmother noticed Mother engaging in these behaviors approximately two weeks before the trial began, and Grandmother believed that Mother was using drugs soon before the trial began.

Grandmother testified that she would be concerned for the children's safety if the trial court returned them to Mother's care. She explained, "I believe that she does not watch them even inside of the apartment. I know that she lets them go outside of the apartment complex by themselves. In my heart, I am afraid that she would rather hurt the children than allow them to come back to me."

Grandmother testified that the children share a room and that they enjoy singing, coloring, and bike-riding. Concerning the progress that the children had made since being placed in her care, Grandmother explained,

> When they first came they were very quiet. If there was any kind of loud noise, [Stacy], which is the youngest one, would immediately go up to [Darcy] for protection . . . . Now there could be a boom and that little one doesn't even flinch. They are happy, they laugh, they giggle, they play, they dance, and those were not the things that they did before.

Grandmother opined that the children would not be able do these things if Mother regained custody of them, and Grandmother stated that it is in the children's best interest to remain in her care. Grandmother testified that if the trial court terminated the parents' rights to the children, she would adopt them, raise them the "best [she] can," love them, and provide for their needs.

At the trial's conclusion, the trial court terminated Mother's parental rights to Darcy and Stacy, named the Department as the children's permanent sole managing conservator, and authorized the Department to arrange an adoption with Grandmother.[4] Mother brought this appeal.

## Legal Sufficiency

Through four issues, Mother contends that the trial court erred by terminating her parental rights because the evidence is legally insufficient to support grounds for termination under the family code. In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West 2014); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v.*

---

[4]The trial court also terminated the fathers' parental rights; the fathers have not appealed.

*Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). We strictly scrutinize termination proceedings in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Termination decisions must be supported by clear and convincing evidence. *See* Tex. Fam. Code Ann. § 161.001(b) (West Supp. 2015); Tex. Fam. Code Ann. § 161.206(a); *E.N.C.*, 384 S.W.3d at 802. "[C]onjecture is not enough." *E.N.C.*, 384 S.W.3d at 810. Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

For a trial court to terminate a parent-child relationship, the Department must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in family code section 161.001(b)(1) and that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b); *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief

8

or conviction that the challenged ground for termination was proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses because that is the factfinder's province. *Id.* at 573–74. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

**Basis for termination under section 161.001(b)(1)**

In her first through third issues, Mother contends that the evidence is legally insufficient to support termination on any of the grounds stated in section 161.001(b)(1) of the family code. The trial court terminated Mother's parental rights on the grounds that she had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, had engaged in conduct or knowingly placed them with persons who engaged in conduct that endangered their physical or emotional well-being, and had failed to comply with provisions of a court order that established actions necessary to achieve their return to her care. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O).

Section 161.001(b)(1)(E) allows a trial court to terminate parental rights if the court finds that the parent has engaged in conduct or knowingly placed a child with persons who engaged in conduct that endangered the physical or

9

emotional well-being of the child. *Id.* § 161.001(b)(1)(E). Under this subsection, the relevant inquiry is whether evidence exists that the endangerment was a direct result of the parent's conduct, including acts and failures to act. *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 712 (Tex. App.—El Paso 2012, no pet.); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).

"Endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *A.S.*, 394 S.W.3d at 711. Thus, endangerment constitutes more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment; however, it is not necessary that the parent's conduct be directed at the child or that the child suffers injury. *M.C.*, 917 S.W.2d at 269; *A.S.*, 394 S.W.3d at 712. Termination under section 161.001(b)(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *J.T.G.*, 121 S.W.3d at 125.

A parent's exposure of a child to domestic violence may support a finding that the parent endangered the child's physical or emotional well-being. *In re L.E.S.*, No. 06-15-00015-CV, 2015 WL 4914743, at *5 (Tex. App.—Texarkana Aug. 18, 2015, no pet.); *In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.). Similarly, a parent's use of illegal drugs, including doing so while knowing that parental rights are in jeopardy, supports termination under subsection 161.001(b)(1)(E). *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex.

10

2009); *In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied); *J.T.G.*, 121 S.W.3d at 125 (stating that "[d]rug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct"); *see also In re R.S.*, No. 02-15-00137-CV, 2015 WL 5770530, at *5 (Tex. App.—Fort Worth Oct. 1, 2015, no pet.) (mem. op.) (concluding that there was endangering conduct because a mother "continued to use methamphetamines, fully aware that doing so could . . . prevent her from reuniting with her children").

Also as part of the endangering-conduct analysis, a court may consider a parent's failure to complete a service plan. *See In re R.F.*, 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.); *see also In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *12 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op.). Further, the risk of emotional harm from a parent's missed visits with a child may support a finding of endangerment. *See In re M.D.*, No. 02-14-00305-CV, 2015 WL 729506, at *6 (Tex. App.—Fort Worth Feb. 19, 2015, no pet.) (mem. op.); *In re R.M.*, No. 07-12-00412-CV, 2012 WL 6163100, at *4 (Tex. App.—Amarillo Dec. 11, 2012, no pet.) (mem. op.). Finally, as a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Considering the evidence in the light most favorable to the trial court's decision to terminate Mother's parental rights, we conclude that the court could

11

have reasonably formed a firm belief or conviction that Mother engaged in conduct that endangered the children's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E); *J.P.B.*, 180 S.W.3d at 573. Specifically, the trial court could have rationally based its endangerment finding on the evidence that Mother has a history of acting violently while around the children (once with one of their fathers, once with Grandmother, and once with Darcy);[5] that she has a history of using illegal drugs (as established by Grandmother's testimony and as indicated by her refusal to submit to drug tests while the case was pending in the trial court);[6] that she made minimal efforts to comply with provisions in her service plan while stating that she was "done with CPS"; that she did not regularly visit the children, sometimes missed visits with them without warning, and had angry outbursts in their presence during visits;

---

[5]On appeal, Mother appears to concede that she has been violent in the past, yet she argues that "[n]o evidence was presented that . . . if the children were placed with [Mother], such an environment would continue." But a factfinder may infer from past conduct endangering a child's well-being that similar conduct will recur if the child is returned to the parent. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

[6]Mother emphasizes that in the trial court, no "failed drug test was produced." The trial court, however, could have inferred from Mother's refusal to take drug tests that she was using drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied). Mother also argues that Grandmother's testimony concerning Mother's drug use was not credible because it was self-serving and not corroborated, but we must defer to the trial court's implicit determination that Grandmother was credible. *See J.P.B.*, 180 S.W.3d at 573; *J.D.S. v. Tex. Dep't of Family Protective Servs.*, 458 S.W.3d 33, 43 (Tex. App.—El Paso 2014, no pet.) ("The trier of fact was the judge of witness credibility and we will not encroach on that territory.").

that she threatened to take the children from Grandmother and abscond from the state; that she once sped the children away from their daycare without securing them; and that she did not adequately monitor them at her apartment complex while she possessed them.

Based on these facts and the remaining evidence in the record, under the authority cited above, we conclude that the evidence is legally sufficient to support the trial court's finding that Mother engaged in conduct that endangered the children's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E); *J.P.B.*, 180 S.W.3d at 573. Therefore, we overrule Mother's second issue. Because the Department must prove only one ground under section 161.001(b)(1) to support termination, we decline to analyze whether the evidence is legally sufficient to support the trial court's findings under subsections (D) and (O) of that section, and we overrule Mother's first and third issues. *See* Tex. R. App. P. 47.1; *In re K.S.*, 448 S.W.3d 521, 545 n.24 (Tex. App.—Tyler 2014, pet. denied); *In re D.D.G.*, 423 S.W.3d 468, 475 (Tex. App.—Fort Worth 2014, no pet.).

**Best interest**

In her fourth issue, Mother argues that the evidence is legally insufficient to show that termination of her parental rights to Darcy and Stacy is in their best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). We review the entire record to determine a child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex.

13

2013). The same evidence may be probative of both the subsection 161.001(b)(1) ground and best interest. *Id.* at 249.

Nonexclusive factors that a factfinder may use in determining the best interest of a child include the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, the plans for the child by these individuals or by the agency seeking custody, the stability of the home or proposed placement, the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807.

In addition to the evidence summarized above that supports the trial court's finding that Mother endangered the children, the record establishes that while the case was pending in the trial court, Mother's acts did not evidence any motivation or desire for her to reunite with the children. Hamilton testified that when she first reviewed the service plan with Mother, Mother did not appear to be willing to address the Department's concerns about the children. Mother did not participate in services in any significant way, and although she was aware of the trial that would permanently impact her rights concerning the children, she did

14

not attend it.  In contrast, the testimony of Hamilton and Grandmother established that Grandmother wants to adopt the children, that they are thriving in her care, that she provides for their essential needs, and that she sought their protection after Mother took them from the daycare facility.  The trial court could have reasonably found that the children's emotional and physical needs would be better met by Grandmother, that Grandmother has better parental abilities and superior plans for the children, that she has a more stable home, and that Mother's acts show that her parental relationship with the children is not proper. *See Holley*, 544 S.W.2d at 372.  Viewing all of the evidence in the light most favorable to the trial court's termination decision, we conclude that the court could have rationally formed a firm belief or conviction that termination of Mother's parental rights is in the children's best interest.  *See* Tex. Fam. Code Ann. § 161.001(b)(2); *J.P.B.*, 180 S.W.3d at 573; *Holley*, 544 S.W.2d at 372.  We overrule Mother's fourth issue.

## Conclusion

Having overruled all of Mother's issues, we affirm the trial court's judgment terminating her parental rights to Darcy and Stacy.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MEIER, JJ.

DELIVERED:  December 10, 2015

15