

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00191-CV

_____

IN THE INTEREST OF K.S. AND E.S., CHILDREN

---

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CV17-00339

---

Before Sudderth, C.J.; Walker and Meier, JJ.
Opinion by Justice Meier

## MEMORANDUM OPINION

Appellant M.M. (Mother) appeals the trial court's judgment terminating her parental rights to her children K.S. and E.S. We will affirm.

### I. BACKGROUND

On June 5, 2017, Appellee Texas Department of Family and Protective Services (TDFPS) received a referral alleging that Mother had neglectfully supervised K.S. and E.S. by leaving them unattended in a parked, running vehicle while she was inside a pawn shop.[1] Caseworker Kathy Matthies visited Mother's apartment the next day and initially encountered the children's presumed father, C.S. (Father). Father denied that Mother was home, but she soon appeared, afraid that Matthies was there to arrest her. Mother admitted that she had left the children in the car but claimed that she was standing by the store's door and could see them. Mother told Matthies that Father had been physically abusive to her in front of the children, that she was afraid of him, and that a no-trespass order prohibited Father from being there. Matthies advised Father that a safety plan was being entered and that he could not remain at Mother's apartment, which had no electricity.

Matthies visited with Mother again the next day. Deputies had conducted a welfare check the night before because Mother had posted messages on Facebook "about leaving this world." Mother told Matthies that she was "very depressed"

---

[1]At the time, K.S. was almost two years old and E.S. was about ten months old.

because Father, who had stayed at Mother's apartment that night even after Matthies had told him that he was prohibited from doing so, had threatened to "f--- her up." Matthies was concerned that Mother might be suicidal. Mother's apartment smelled like marijuana and was "very dirty." TDFPS removed the children the same day.

At the time of her bench trial, Mother was in jail for possessing methamphetamine. She testified that she had used methamphetamine during the pendency of the case, that she had been diagnosed with "[b]orderline personality disorder with acute schizophrenia" but was not taking her medication, and that she did not complete any of the service plan that was made an order of the court. The trial court signed a final judgment terminating the parent-child relationship between Mother and the children, finding by clear and convincing evidence that termination was (i) appropriate under subsections (D), (E), (N), and (O) of family code section 161.001(b)(1) and (ii) in the children's best interests.[2] *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N), (O), (b)(2) (West Supp. 2017).

## II. ENDANGERMENT AND BEST INTEREST FINDINGS

In her only issue, Mother argues that no evidence supports each of the trial court's termination findings. We limit our analysis to the trial court's subsection 161.001(b)(1)(D) and (E) and best interest findings. *See In re J.G.S.*, 550 S.W.3d 698, 703 (Tex. App.—El Paso 2018, no pet.) (stating that only one predicate finding under

---

[2]The trial court also terminated Father's parental rights to the children, but he did not appeal.

3

section 161.001(b)(1) is necessary when there is also an affirmative best interest finding).

## A.    Burden of proof and standard of review

For a trial court to terminate a parent-child relationship, the party seeking termination must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in family code section 161.001(b)(1) and that termination is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).  Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that TDFPS proved the challenged ground for termination.  *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).  We review all the evidence in the light most favorable to the finding and judgment.  *Id.*  We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so.  *Id.*  We disregard all evidence that a reasonable factfinder could have disbelieved.  *Id.*  We consider undisputed evidence even if it is contrary to the finding.  *Id.*  That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not.  *See id.*

4

## B. Subsection 161.001(b)(1)(D) and (E) findings

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(b)(1)(D). Under subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *See In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

The trial court may also order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(b)(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is

required.  *Id.*  Subsection (E) does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone.  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Endangerment—meaning to expose to loss or injury, to jeopardize—can take many forms.  *J.T.G.*, 121 S.W.3d at 125–26.  Domestic violence may be considered evidence of endangerment.  *S.R.*, 452 S.W.3d at 361.  Parental illegal drug use supports a conclusion that the child's surroundings endanger his physical or emotional well-being.  *J.T.G.*, 121 S.W.3d at 125.  Criminal conduct or imprisonment is relevant to a review of whether a parent has engaged in a course of conduct that endangered the well-being of the child.  *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 712–13 (Tex. App.—El Paso 2012, no pet.).  Mental illness alone is not a ground for terminating the parent-child relationship, but untreated mental illness can expose a child to endangerment.  *S.R.*, 452 S.W.3d at 363.  And a parent's failure to complete a service plan may be considered as part of an endangerment analysis under subsection 161.001(b)(1)(E).  *In re P.H.*, 544 S.W.3d 850, 858 (Tex. App.—El Paso 2017, no pet.).

Because the evidence pertaining to subsections 161.001(b)(1)(D) and (E) is interrelated, we conduct a consolidated review.  *See J.T.G.*, 121 S.W.3d at 126.

Mother exposed the children to domestic violence.  At the outset of the case, Mother told Matthies that there was domestic violence in the home and that she was

6

afraid of Father. One incident involved Father threatening Mother with a sword in front of the children. At trial, Mother testified that "in the last few months that [they] were together," Father had been physically abusive with her at least once per week. Despite the ongoing domestic violence in the household, Mother permitted Father to stay at her apartment—even in violation of a no-trespass order.

Mother used illegal drugs both before and after the children were removed. She testified that she was fourteen or fifteen years old when she first used methamphetamine, that she had used methamphetamine during the pendency of the case, and that she has a "problem" with methamphetamine. Mother's apartment smelled like marijuana when deputies conducted a welfare check and when Matthies conducted her second visit.

At the time of trial, Mother was incarcerated for possessing methamphetamine. She had been incarcerated for a total of three and a half months on two separate occasions from the time that TDFPS filed its original petition, and at the time, she faced up to twenty years in prison for the possession charge. Mother's criminal history included violating her probation (on two counts of forgery) for using methamphetamine and heroin. Mother had previously been incarcerated for forgery.

Mother has a mental health diagnosis—"[b]orderline personality disorder with acute schizophrenia"—but is noncompliant with her medication (Seroquel). She acknowledged that methamphetamine use is "especially bad" for people with a mental health disorder like hers.

7

Finally, Mother admitted that she had not completed a service plan that TDFPS had prepared for her and that was made an order of the trial court.

Viewing the evidence in the light most favorable to the termination findings under family code subsections 161.001(b)(1)(D) and (E), a reasonable factfinder could have formed a firm belief or conviction that Mother engaged in endangering conduct and exposed the children to endangering conditions. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *J.P.B.*, 180 S.W.3d at 573–74. The evidence is legally sufficient to support the trial court's subsection (D) and (E) termination findings. We overrule this part of Mother's issue.

## C.     Best interest finding

We review the entire record to determine the child's best interest.[3] *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include (a) the desires of the child; (b) the emotional and physical needs of the child now and in the future; (c) the emotional and physical danger to the child now and in the future; (d) the parental abilities of the individuals seeking custody; (e) the programs available to assist these individuals to promote the best interest of the child; (f) the plans for the child by these individuals or by the agency seeking custody; (g) the stability of the

---

[3]Mother argues that legally insufficient evidence supports the trial court's best interest finding because the trial court failed to specifically mention any of the *Holley* factors when it recited its ruling at the conclusion of the bench trial, but the trial court's oral ruling is not evidence.

8

home or proposed placement; (h) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (i) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we consider, among other evidence, the *Holley* factors"); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012). These factors are not exhaustive, and some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27.

The evidence that supports the trial court's subsection (D) and (E) findings—domestic violence, illegal drug use, incarceration, untreated mental illness, and an incomplete service plan—is probative of the best interest finding. *See E.C.R.*, 402 S.W.3d at 250. Further, caseworker Spencer Brown testified as follows: that he had concerns about Mother's stability; that the children's medical, emotional, and physical needs were currently being met by their caregivers; and that an adoption-motivated home had been located. CASA volunteer Monica Laux testified that the children were doing "[v]ery good." Both Brown and Laux recommended that Mother's parental rights be terminated.

Considering the relevant *Holley* factors, and giving due consideration to evidence that the trial court could have reasonably found to be clear and convincing, the trial court could reasonably have formed a firm belief or conviction that termination of Mother's parental rights to the children is in the children's best interests. *See J.P.B.*, 180 S.W.3d at 573; *Holley*, 544 S.W.2d at 371–72. Thus, the

9

evidence is legally sufficient to support the trial court's best interest finding. We overrule this part of Mother's issue. We need not reach her other arguments. *See* Tex. R. App. P. 47.1.

## III. CONCLUSION

Having overruled the dispositive parts of Mother's only issue, we affirm the trial court's judgment terminating Mother's parental rights to both K.S. and E.S.

/s/ Bill Meier
Bill Meier
Justice

Delivered: September 28, 2018