

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00237-CV

**IN THE INTEREST OF C.J.G.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2017PA01800
Honorable Richard Garcia, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Luz Elena D. Chapa, Justice
               Irene Rios, Justice

Delivered and Filed: October 30, 2019

REVERSED IN PART; AFFIRMED IN PART

J.K. appeals the trial court's order terminating his parental rights to C.J.G. On appeal, J.K. contends the trial court lacked jurisdiction to make findings on four of the five predicate statutory grounds for termination because those grounds were not supported by the pleadings. J.K. also challenges the sufficiency of the evidence to support the trial court's findings on the predicate statutory grounds and that termination is in C.J.G.'s best interest. Finally, J.K. contends trial counsel rendered ineffective assistance of counsel.

### BACKGROUND

On August 11, 2017, the Texas Department of Family and Protective Services filed a petition to terminate the parental rights of C.J.G.'s mother and another man, J.G., an alleged father. On August 30, 2018, the trial court signed an order for genetic testing to determine J.G.'s parentage

of C.J.G. On August 31, 2018, the Department filed an amended petition also seeking to terminate J.K.'s rights as an alleged father. On October 26, 2018, the trial court signed an order rescinding its prior genetic testing order and ordered genetic testing to determine J.K.'s parentage of C.J.G.

On November 14, 2018, the Department filed a motion to adjudicate J.K's parentage of C.J.G. and to dismiss J.G. from the suit based on the test results. On November 21, 2018, the trial court signed orders adjudicating J.K. to be C.J.G.'s biological father and dismissing J.G. from the suit. On December 1, 2018, J.K. signed his service plan.

On December 3, 2018, the trial court called the case for trial. The trial court noted J.K.'s attorney was in the building but proceeded with trial announcing, "It's 8:48 on an 8:30 case." The Department called the Department's removing caseworker as its first witness. The removing caseworker identified herself, stated she received the case in July of 2017, and explained she received a first referral on July 27, 2017 for C.J.G.'s mother who was allegedly using and dealing drugs and a second referral on August 10, 2017, based on a physical altercation between C.J.G.'s mother and J.G. while C.J.G. was present. At that time, J.K. and his appointed attorney entered the courtroom. J.K.'s attorney announced not ready, explaining J.K. was brought into the case very late and was still working through his options and trying to make arrangements. The trial court granted a continuance to January 25, 2019.

On January 17, 2019, retained counsel filed a notice of appearance for J.K. On January 25, 2019, trial resumed, and the trial court heard testimony on January 25, 2019, and February 6, 2019. The trial court took the matter under advisement and signed an order terminating J.K.'s parental rights on May 15, 2019. J.K. appeals.

## STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate

grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found clear and convincing evidence of the following five predicate grounds under subsection 161.001(b)(1) to terminate J.K.'s parental rights: (1) knowingly placed or knowingly allowed C.J.G. to remain in conditions or surroundings which endangered his physical or emotional well-being; (2) engaged in conduct or knowingly placed C.J.G. with persons who engaged in conduct which endangered his physical or emotional well-being; (3) voluntarily, and with knowledge of the pregnancy, abandoned C.J.G.'s mother, failed to provide her adequate support or medical care, and remained apart from C.J.G. or failed to support C.J.G. since birth; (4) constructively abandoned C.J.G.; and (5) failed to comply with a court-ordered service plan. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E,) (H), (N), (O). The trial court also found clear and convincing evidence that terminating J.K.'s parental rights was in J.K.'s best interest.

## LEGAL AND FACTUAL SUFFICIENCY

In his second and third issues, J.K. challenges the sufficiency of the evidence to support the trial court's findings on the predicate statutory grounds and that termination is in the children's best interest.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

A.      Predicate Statutory Grounds

Generally, "if multiple predicate grounds are found by the trial court, we will affirm based on any one ground, assuming a proper best interest finding." *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). However, because termination under section 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, appellate courts are mandated to address issues raised on appeal challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236-37 (Tex. 2019). "[T]he evidence concerning [those] two statutory grounds for termination is interrelated." *In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.). Accordingly, we can consolidate our analysis of both grounds. *See id.*

Section 161.001(b)(1)(D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Under subsection D, the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being," although parental conduct can be a factor that contributes to this environment. *In re J.T.G.*, 121 S.W.3d at 125. "'Environment' refers to the acceptability of living conditions, as well as a parent's conduct in the home." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id.* "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) (internal quotation omitted).

Section 161.001(b)(1)(E) allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection E, the trial court is asked to determine whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125.

In the context of both subsection D and E, "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or mental health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *In re J.T.G.*, 121 S.W.3d at 125. "However, there are some distinctions in the application of subsections (D) and (E)." *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 713 (Tex. App.—El Paso 2012, no pet.). First, "[k]nowledge of paternity is a prerequisite to a showing of knowing placement of a child in an endangering environment under Section 161.001[b](1)(D)." *Id.* (citing *In re Stevenson*, 27 S.W.3d 195, 201-03 (Tex. App.—San Antonio 2000, pet. denied)). Knowledge of paternity is not, however, a prerequisite to a showing of a parental course of conduct which endangers a child under Section 161.001(b)(1)(E) "[b]ecause section 161.001[b](1)(E) requires only that the parent's conduct endanger the child." *In re Stevenson*, 27 S.W.3d at 202. Therefore, "a father's conduct prior to the establishment of his paternity can be considered under section 161.001[b](1)(E)." *Id.* Second, termination under subsection D is permitted based upon only a single act or omission. *In re R.S.-T.*, 522 S.W.3d at 109. Conversely, under subsection E, our analysis may not rest on a single act or omission; it must be "a voluntary, deliberate, and conscious course of conduct." *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Finally, "[i]n evaluating endangerment under subsection D, we consider the child's environment before the Department obtained custody

of the child." *In re S.R.*, 452 S.W.3d at 360. "Under subsection E, however, courts may consider conduct both before and after the Department removed the child from the home." *Id.*

To support the trial court's findings under subsections D and E, the Department relies on evidence that J.K. was driven to one of his visitations with C.J.G by Roger Solis, a registered sex offender who was sporadically employed by the company owned by J.K. and his brother. When C.J.G. arrived at the visitation with his caregivers,[1] Solis exited the truck and began threatening the caregivers with a rifle. Although J.K. testified he was not aware of Solis's criminal history, J.K.'s sister testified she personally called the police on one occasion when Solis was employed by the company because she wanted him to be placed in a drug rehabilitation facility based on comments he was making. J.K.'s sister also testified she was aware of Solis's drug use. In addition, the Department's caseworker testified J.K. told her Solis was an ex-employee and he had issues with Solis at work, requiring them to call the police a couple of times to have him removed because he was aggressive with the other employees.

The evidence regarding J.K.'s association with Solis, however, does not support termination under subsection D because it involved C.J.G.'s environment after the Department obtained custody of C.J.G. *See id.*; *Djeto v. Tex. Dep't of Protective & Regulatory Servs.*, 928 S.W.2d 96, 98 (Tex. App.—San Antonio 1996, no writ) (holding evidence insufficient to support termination under subsection D where child was in Department's continuous care and custody "since well before [the father's] paternity was adjudicated, and all visits since that time have been supervised"). Similarly, because this was evidence of only a single act or omission, the evidence regarding J.K.'s association with Solis does not support termination under subsection E.

---

[1] The caregivers are the aunt of C.J.G.'s mother and the aunt's husband.

Accordingly, because the evidence is legally insufficient to support the trial court's findings under subsections D and E, we reverse the portion of the trial court's order containing those findings.

As the Department correctly notes, however, under subsection O, the trial court also found J.K. had failed to comply with his court-ordered service plan. Subsection O "does not make provision for excuses for [a] parent's failure to comply with the court-ordered [service plan]." *In re J.M.S.*, No. 04-18-00608-CV, 2019 WL 574862, at *3 (Tex. App.—San Antonio Feb. 13, 2019, no pet.) (mem. op.) (internal quotation omitted). "Even substantial compliance with a family service plan is not the same as complete compliance." *Id.* One of the provisions of J.K.'s service plan required him to "not associate with individuals who could harm or endanger [C.J.G.] in any way." The evidence presented at trial supports the trial court's finding under subsection O because the evidence established: (1) Solis was an individual who not only could harm or endanger C.J.G. but actually endangered C.J.G.; and (2) J.K. associated with Solis. Accordingly, the evidence is legally and factually sufficient to support the trial court's finding under subsection O, and we do not address the trial court's other predicate findings.[2]

B.      Best Interest Finding

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7)

---

[2] We note J.K. does not make any argument regarding the good faith exception to compliance with a service plan under section 161.001(d); however, we further note that the Department's petition was filed on August 11, 2017, and section 161.001(d) "does not apply to suits filed before subsection (d)'s effective date — September 1, 2017." *In re J.M.S.*, 2019 WL 574862, at *3.

the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Furthermore, evidence that proves one or more statutory grounds for termination may be probative in proving termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27.

The evidence established J.K. had eight visits with C.J.G. after J.K.'s parentage was adjudicated in November of 2018, with the first visit occurring in December of 2018. Although the visitation monitor and J.K. testified a bond was developing between J.K. and C.J.G., the Department's caseworker testified J.K. only refers to C.J.G. as "the child." The evidence also established J.K. underwent a prior DNA test three or four months before the court-ordered test which established his parentage; however, the second test was necessary due to issues regarding the chain of custody relating to the first test. The Department's legal caseworker testified that when she informed J.K. of the results of the second DNA test, he stated, "I was hoping I would not be the father," despite his knowledge of the prior test results. The legal caseworker also testified J.K. did not attend two appointments scheduled in October of 2018 to review his service plan. The service plan could have allowed J.K.'s visitation with C.J.G. to begin two months before visitation began in December of 2018. J.K. testified C.J.G.'s mother, L.M., texted him when she discovered she was pregnant but told him she thought her boyfriend was the father. J.K. further testified he called the hospital after C.J.G.'s birth and was told he had no rights because L.M.'s

boyfriend was listed as the father on the birth certificate. J.K. denied that he went to the hospital instead of just calling the hospital. One of C.J.G.'s caregivers, however, testified J.K. told her that he went to the hospital and was told to contact the attorney general's office. The caregiver further testified J.K. told her that he contacted the attorney general's office, received some paperwork, but did not pursue it.

C.J.G.'s pediatrician testified C.J.G. has significant developmental delays, consistent with exposure to methamphetamines in utero, and is possibly autistic. C.J.G. requires speech therapy, physical therapy, and occupational therapy. C.J.G. also is at very high risk for Attention Deficit Hyperactive Disorder and learning disabilities which can be difficult for a parent to monitor. J.K.'s therapist testified she had concerns about J.K.'s ability to protect C.J.G. and does not believe he understands the severity of C.J.G.'s health issues. Instead, the therapist testified J.K. believes C.J.G. being spoiled is the reason he does not talk and wants to be carried everywhere.

One of C.J.G.'s caregivers testified J.K. told her he sold Viagra to L.M. on one occasion. J.K. testified the Viagra does not require a prescription, and he purchased it online. Although J.K. admitted he gave the pills to L.M., he denied selling them to her. J.K. also admitted he once asked C.J.G.'s caregivers to allow L.M. to see C.J.G. on C.J.G.'s birthday.

Although J.K. and his sisters testified J.K.'s sisters would assist him in caring for C.J.G., J.K.'s therapist testified J.K. had not expressed a plan of care to her. J.K.'s therapist further testified J.K. appeared to be a workaholic, and she feared C.J.G. would be placed with a nanny. J.K.'s therapist also expressed concern regarding the people with whom J.K. associates and stated J.K. did not appear to understand why Solis's actions with the gun in the parking lot of the visitation facility was a "big deal." In addition, the evidence established J.K. texted with L.M. the morning of trial, and J.K.'s therapist expressed concern that he would continue to associate with

L.M. despite her drug use. Finally, C.J.G.'s caregiver testified J.K. had provided only $100.00 to support C.J.G. and purchased him some presents.

Although C.J.G.'s pediatrician expressed concern that his caregivers had not made an appointment for C.J.G. with a developmental specialist with regard to his possible autism, the caregivers had consistently taken C.J.G. for other appointments and had him regularly engaged in physical, speech, and occupational therapy. The caregivers testified they follow all of the therapists' recommendations, and C.J.G.'s pediatrician testified C.J.G. had improved while in their care. C.J.G. is very bonded with the caregivers, and they are ready to adopt him.

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that terminating J.K.'s parental rights was in C.J.G.'s best interest.

## PLEADINGS

In his first issue, J.K. contends the only predicate statutory ground pled by the Department in its amended petition alleged he knowingly placed or knowingly allowed C.J.G. to remain in conditions or surroundings which endangered his physical or emotional well-being. Therefore, J.K. contends the trial court lacked jurisdiction to make findings on the other four predicate statutory grounds for termination because those grounds were not supported by the pleadings. Because we have held the evidence sufficient to support termination based on J.K.'s failure to comply with his court-ordered service, plan, we first consider whether the trial court had jurisdiction to terminate on that ground.

Under Texas Rule of Civil Procedure 301, a judgment must conform to the pleadings; however, issues not raised in pleadings can be tried by express or implied consent. *In re B.L.H.*, No. 14-18-00087-CV, 2018 WL 3385119, at *9 (Tex. App.—Houston [14th Dist.] July 12, 2018, no pet.) (mem. op); *In re K.S.*, 448 S.W.3d 521, 533 (Tex. App.—Tyler 2014, pet. denied); Tex. R. Civ. P. 301. To determine whether an issue was tried by consent, we examine the record to

determine if the issue was tried as opposed to evidence being presented on the issue. *In re B.L.H.*, 2018 WL 3385119, at \*9; *In re K.S.*, 448 S.W.3d at 533. An unpleaded issue may be deemed tried by consent when the evidence on the issue is developed without objection under circumstances indicating both parties understood the issue was being contested. *In re B.L.H.*, 2018 WL 3385119, at \*9; *In re K.S.*, 448 S.W.3d at 533. "[A] party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *see also In re K.S.*, 448 S.W.3d at 533.

In this case, the service plan was admitted into evidence. And, J.K. and other witnesses testified about J.K.'s association with Solis and Solis's history and actions without objection. Finally, when the Department requested termination based on J.K.'s failure to comply with his service plan, no objection was made. Therefore, the issue of whether J.K.'s parental rights should be terminated based on his failure to comply with his court-ordered service plan was tried by consent.

J.K.'s first issue is overruled.

### INEFFECTIVE ASSISTANCE

In his final issue, J.K. contends trial counsel rendered ineffective assistance. J.K. first asserts the appointed counsel representing him at the beginning of the trial on the merits was ineffective in not being present in the courtroom when the case was called for trial. J.K. also asserts his retained counsel was ineffective in failing to object to questions posed to J.K.'s therapist and in asking the therapist to opine on whether J.K.'s rights should be terminated.

With regard to J.K.'s retained counsel, this court has held that a "parent who hires his or her own attorney in lieu of the attorney appointed by the court cannot raise an ineffective assistance of counsel challenge to [a] parental termination order." *In re C.J.*, No. 04-14-00663-CV, 2015

WL 1089660, at *2 (Tex. App.—San Antonio Mar. 11, 2015, no pet.) (mem. op.); *see also In re L.G.D.*, No. 06-17-00061-CV, 2017 WL 4507673, at *2 (Tex. App.—Texarkana Oct. 10, 2017, pet. denied) (mem. op.) (listing appellate courts holding same); *but see In re E.R.W.*, 528 S.W.3d 251, 261 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (mem. op.) (holding ineffective assistance complaint can be raised even if counsel was retained). Accordingly, we overrule J.K,'s ineffective assistance claim as it pertains to his retained counsel.

With regard to J.K.'s appointed counsel, the *Strickland* standard used for analyzing an ineffective assistance of counsel claim in parental-rights termination cases is the same as that used in criminal cases. *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003). Under that standard, J.K. must prove by a preponderance of the evidence that (1) his counsel's performance was deficient; and (2) the deficient performance resulted in prejudice. *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Prejudice is established by showing "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." *Id*. at 549-50 (internal quotation omitted).

As previously noted, the only testimony elicited from the removing caseworker before J.K.'s appointed counsel appeared in court and moved for a continuance was her testimony identifying herself, stating she received the case in July of 2017, and explaining the two referrals she received on July 27, 2017 and August 10, 2017. This testimony spans three-quarters of page six of the fourteen-page reporter's record taken on December 3, 2018. Even if we assume appointed counsel was deficient in not being present at the beginning of trial, J.K. has not shown that the outcome of the trial would have been different. Based on the arguments made by J.K.'s appointed counsel, J.K. was granted a continuance and subsequently retained counsel. J.K. argues in his brief that if appointed counsel had been present, he "could have preserved any erroneous questions or response[s] of the initial trial witness." J.K. does not, however, assert any of the seven

questions and responses were actually "erroneous." Therefore, we hold J.K. failed to meet his burden to establish his ineffective assistance of counsel claim.

J.K.'s fourth issue is overruled.

## CONCLUSION

Because the evidence in insufficient to support the trial court's findings under subsections D and E, the portion of the trial court's order setting forth those findings is reversed, and the cause is remanded to the trial court for the entry of an order omitting those findings. The remainder of the trial court's order is affirmed.

Sandee Bryan Marion, Chief Justice