**Affirmed and Memorandum Opinion filed October 2, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00368-CV

## IN THE INTEREST OF C.A.G., AKA C.G.; J.P.G., AKA J.G., CHILDREN

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-05227J**

## M E M O R A N D U M   O P I N I O N

The trial court terminated the parental rights of A.G. (Mother) and appellant L.G. (Father) to their children, Carlos and Jana,[1] and appointed the Texas Department of Family and Protective Services (the Department) to be the children's managing conservator. Father challenges the sufficiency of the evidence to support termination. Mother does not appeal. We affirm.

---

[1] Carlos and Jana are pseudonyms. Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

BACKGROUND

## A.     Background

The Department received a referral in July 2016 alleging physical abuse of then-18-month-old Jana by an unknown perpetrator. According to the referral, Jana had facial injuries reportedly caused by a fall. The Department was told Carlos and Jana were in the care of a woman named Yolanda because Mother was incarcerated. When the Department spoke to Mother, she denied the children were with Yolanda, insisting she left them with Father. The children were located with Father a month later.[2] At that time, Jana did not appear to have bruises or marks, and Carlos denied any abuse or neglect.

In September 2016, the Department filed its original petition for protection of the children, seeking managing conservatorship of the children and termination of Mother's and Father's parental rights. The Department sought removal of the children. Following a full adversary hearing, the trial court found there was sufficient evidence of a continuing danger to the children's physical health or safety and allowing them to remain with Mother or Father was contrary to their welfare. Based on that and other findings, the trial court ordered the children to be removed from Mother's and Father's care and named the Department as their temporary managing conservator.

## B.     Trial

The case went to trial in 2018. The Department presented testimony from caseworker Jessike'a Ledesma, Child Advocate Dave Gutacker, and Mother. Father testified on his own behalf but did not call other witnesses. The Department's documentary evidence included Father's family service plan and the court order

---

[2] The record suggests the delay was due in part to staffing issues within the Department rather than acts or omissions by either parent.

adopting it; written reports by Ledesma and Gutacker; Father's drug tests results; and judgments of Father's criminal convictions. Father's evidence included certificates of his completion of a parenting course and a drug-and-alcohol course.[3]

### 1. Evidence about the children

Carlos had just begun first grade when he was removed from the home. According to Ledesma, he was "not able to read and write properly" at that time and appeared to have had no social interaction. She testified Carlos "did not know his colors" or any letters. Father disagreed, testifying he had "worked with" Carlos before removal. The children were placed together in a foster-to-adopt home. Almost eight years old at the time of trial, Carlos had improved greatly. He had to repeat first grade, but the school provided him extra support and he was progressing well. In a permanency report to the court, Ledesma described Carlos as "very energetic, outgoing, playful, talkative, and not afraid to ask a lot of questions." Jana, then three years old, was said to be "very engaging, friendly, and affectionate." Ledesma noted both children interacted well with others and displayed age appropriate social skills.

Child Advocates recommended termination of Father's parental rights based on his long criminal history. Gutacker said the foster parents ensured Jana received an Early Childhood Intervention (ECI) evaluation and arranged for Carlos to undergo testing for attention deficit hyperactivity disorder (ADHD) and other conditions. The foster parents planned to adopt Carlos and Jana if the parents' rights were terminated. Gutacker believed both children had assimilated well and characterized the foster family as a "good long term solution" for them. Gutacker testified Carlos recently told him he wanted to stay with his foster parents.

---

[3]Because Mother has not appealed, we discuss evidence about her only when relevant to Father.

## 2.     Evidence about Father's criminal history

The record reflects more than 20 years of steady criminal activity by Father, beginning in 1996. In addition to nine convictions for theft, Father was convicted of making a terroristic threat, possession of a controlled substance (twice), possession of a dangerous drug, failure to stop and provide identification, possession of an unlawful weapon, and harassment. The harassment charge alleged Father threatened, in writing, to murder Mother. Even though he pleaded guilty to that offense, at trial both Father and Mother denied he made such a threat.

Father was convicted twice of driving while intoxicated with a child younger than 15 years old in the car. The child underlying each of those convictions was Carlos, first when he was 18 months old and again when he was almost five.

In total, Father has been sentenced to almost eight years' confinement. Nearly six of those years were the result of the eight crimes Father committed when Mother was pregnant with Carlos or after Carlos was born. He began his most recent sentence—two years' confinement for theft—about seven months after the children were removed. He was scheduled to be released very soon after trial, less than a year into his sentence.

The trial court found (1) Father engaged in the conduct described in subsections E and O of section 161.001(b)(1) of the Family Code, and (2) termination of his parental rights was in the children's best interest. The trial court appointed the Department to be the children's managing conservator.

## ANALYSIS

Father raises two issues on appeal. First, he contends the evidence is legally and factually insufficient to support the trial court's finding under subsection O of section 161.001(b)(1) of the Family Code. Second, he contends the evidence is

factually insufficient to support the trial court's best-interest finding.

## I.     Burden of proof and standards of review

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980); *In re J.E.M.M.*, 532 S.W.3d 874, 879 (Tex. App.—Houston [14th Dist.] 2017, no pet.). However, the child's emotional and physical interests must not be sacrificed to preserve parental rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Parental rights can be terminated if clear and convincing evidence shows (1) the parent committed an act described in section 161.001(b)(1) of the Family Code, and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2). Only one predicate finding under section 161.001(b)(1), along with the best-interest determination, is necessary to support termination. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007. This high burden reflects the severity of termination.

The heightened burden of proof results in heightened standards of review for evidentiary sufficiency:

- *Legal sufficiency.* We consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could have disbelieved. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

- *Factual sufficiency.* We consider and weigh all the evidence, including disputed or conflicting evidence, to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was

5

true. We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that dispute in favor of its finding. *C.H.*, 89 S.W.3d at 25.

The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We may not second-guess the fact finder's resolution of a factual dispute by relying on disputed evidence or evidence the fact finder "could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

## II.    Predicate ground for termination: Endangerment

### A.    Legal standards

Section 161.001(b)(1)(E) of the Family Code requires clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). "To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "Conduct" includes acts and failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The parent's conduct both before and after the Department removed the child from the home is relevant to a subsection E inquiry. *S.R.*, 452 S.W.3d at 361 (considering parent's criminal behavior and imprisonment before and after removal).

A finding of endangerment under subsection E requires evidence the endangerment resulted from the parent's conduct, including acts, omissions, or failures to act. *Id.* at 360. Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and

conscious course of conduct by the parent. *Id.* at 361. A court properly may consider actions and inactions occurring both before and after a child's birth to establish a "course of conduct." *In re S.M.*, 389 S.W.3d 483, 491–92 (Tex. App.—El Paso 2012, no pet.). While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffer injury. Rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re R.W.*, 129 S.W.3d 732, 738–39 (Tex. App.—Fort Worth 2004, pet. denied). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re A.L.H.*, 515 S.W.3d 60, 92 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

A parent's criminal conduct, convictions, or imprisonment is relevant to the question of whether the parent engaged in a course of conduct that endangered the well-being of the child. *S.R.*, 452 S.W.3d at 360–61; *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 712–13 (Tex. App.—El Paso 2012, no pet.). Imprisonment alone is not an endangering course of conduct but is a fact properly considered on the endangerment issue. *Boyd*, 727 S.W.2d at 533–34. Routinely subjecting a child to the probability he will be left alone because his parent is in jail endangers the child's physical and emotional well-being. *S.M.*, 389 S.W.3d at 492.

### B.    Application

Father concedes the evidence is legally and factually sufficient to support the trial court's finding of endangerment under Family Code section 161.001(b)(1)(E). Unchallenged findings bind us "unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *see In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (affirming termination based on unchallenged findings supported by record).

We agree the record supports the finding of endangerment. Through his criminal activity, Father routinely subjected the children to the probability they would be left alone because their parent was in jail. That endangered the children's physical and emotional well-being. Further, two of his convictions resulted from conduct that directly endangered Carlos' life—driving while intoxicated with Carlos in the car. We conclude the evidence is legally and factually sufficient to support the trial court's finding under subsection E.

Though he concedes the subsection E finding, Father challenges the evidentiary sufficiency of the subsection O finding because the facts underlying that finding are relevant to the best-interest analysis. We address that challenge in our discussion of best interest. We overrule Father's first issue.

## III.   Best interest

### A.   Legal standards

Termination must be in the child's best interest. Tex. Fam. Code Ann. § 161.001(b)(2). Texas courts presume two conditions to be in a child's best interest: (1) prompt, permanent placement in a safe environment, *id.* § 263.307(a); and (2) remaining with the child's natural parent. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Courts may consider these non-exclusive factors, known as the *Holley* factors, in its best-interest analysis: the desires of the child; the physical and emotional needs of the child now and in the future; the physical and emotional danger to the child now and in the future; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). This list of factors is not exhaustive, and evidence is not required on all the factors to support a finding that termination is in the child's best interest. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The Family Code also identifies factors the court may consider in evaluating a parent's willingness and ability to provide the child with a safe environment. Tex. Fam. Code Ann. § 263.307(b). Finally, evidence supporting the statutory predicate of termination is relevant to the best-interest analysis. *S.R.*, 452 S.W.3d at 366.

## B. Application of relevant factors

### 1. The children

*Desires.* When a child is too young to express his desires, the fact finder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Uncontroverted evidence demonstrates both children had adjusted well and bonded with their foster family. Though Jana was too young to express her desires, Carlos told Gutacker he wanted to stay with his foster parents.

*Needs.* The fact that Carlos had to repeat the first grade implies he needed significant academic support. His school and the foster parents provided him the help he required. The foster parents were arranging for Carlos to be evaluated for ADHD and other conditions. They also ensured Jana received an ECI evaluation.

*Stability of proposed placement.* Both Ledesma and Gutacker believed the foster parents would provide a safe and stable home for Carlos and Jana. The foster parents planned to adopt both children if the parents' rights were terminated.

### 2. Father

***Predicate grounds under Family Code section 161.001(b)(1).*** Evidence supporting termination under the grounds listed in section 161.001(b)(1) can be considered in support of a finding that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 27. Accordingly, the evidence of Father's endangerment of the children, discussed above, is relevant to the best-interest analysis.

***History with the Department.*** Father came under investigation in 2012 and 2014, both times for negligent supervision of Carlos. The record does not reflect the details of the investigations. The Department was unable to determine the veracity of the 2012 allegations but found reason to believe the 2014 allegations.

***Willingness and ability to parent.*** Father testified he wants his children back, insisting he had "changed [his] whole life around." He did everything the Department asked of him, he said, all while working. He contended his children were doing well at the time of removal and should not have been removed. He said he would return to his previous job and live in a halfway house when he got out of prison. Father's professed willingness to parent his children cannot be divorced from the fact that he committed—and pleaded guilty to—at least eight crimes during his children's lifetimes, two of which directly endangered Carlos' life. The sentences for those offenses totaled nearly six years.

### 3. Conclusion on best interest

Considering all the evidence in the light most favorable to the best-interest finding, we conclude the trial court reasonably could have formed a firm belief or conviction that termination of Father's parental rights was in the children's best interest. *J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 25. Further, we conclude the disputed evidence would not prevent a reasonable fact finder from making this finding. *D.R.A.*, 374 S.W.3d at 531. Accordingly, the evidence is legally and

factually sufficient to support the trial court's finding that termination is in Carlos' and Jana's best interest. We overrule Father's second issue.

## CONCLUSION

We affirm the trial court's judgment.


/s/    Martha Hill Jamison
       Justice

Panel consists of Justices Christopher, Jamison, and Brown.