

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00009-CV

_____

IN THE INTEREST OF B.W., A CHILD

---

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CV15-00769

---

Before Birdwell, Bassel, and Womack, JJ.
Supplemental Memorandum Opinion by Justice Bassel

**SUPPLEMENTAL MEMORANDUM OPINION**

On May 9, 2019, this court issued its opinion and rendered judgment in this cause affirming the termination of Appellant C.W.'s (Father's)[1] parental rights to Blake[2] after holding that the evidence was sufficient to support two unchallenged section 161.001(b)(1) grounds—(F) and (Q).  *In re B.W.*, No. 02-19-00009-CV, 2019 WL 2041808, at *8–9 (Tex. App.—Fort Worth May 9, 2019, no pet.) (mem. op.).  The following week, the Texas Supreme Court issued its opinion in *In re N.G.*, in which it held that due process and due course of law requirements mandate that an appellate court must address and detail its analysis for an appeal of termination of parental rights when a parent has presented an issue under family code section 161.001(b)(1)(D) or (E) even when there is sufficient evidence to support another enumerated ground for termination.  *See* No. 18-0508, 2019 WL 2147263, at *4 (Tex. May 17, 2019).  We therefore supplement our May 9, 2019 opinion with the following analysis of the portion of Father's second issue challenging the section 161.001(b)(1)(E) finding.

Texas Family Code section 161.001(b)(1)(E) provides that the court may order termination of the parent-child relationship if the court finds by clear and convincing

---

[1]*See generally* Tex. Fam. Code Ann. § 109.002(d) (providing that on the court's own motion, it may in its opinion identify the parties by fictitious names or by their initials only).

[2]*See* Tex. R. App. P. 9.8(b)(2) (requiring court to use aliases to refer to minors in an appeal from a judgment terminating parental rights).

evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct [that] endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). To "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Under subsection (E), the evidence must show that the endangerment was the result of the parent's conduct, including acts, omissions, or failure to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Termination must be based on more than a single act or omission, and there must be a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re A.B.*, 412 S.W.3d 588, 599 (Tex. App.—Fort Worth 2013) (en banc op. on reh'g), *aff'd*, 437 S.W.3d 498 (Tex. 2014). "Domestic violence, want of self[-]control, and propensity for violence may be considered as evidence of endangerment." *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Evidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent engaged in a course of conduct that endangered the well-being of the child. *A.S. v. Tex. Dep't of*

*Family & Protective Servs.*, 394 S.W.3d 703, 712–13 (Tex. App.—El Paso 2012, no pet.). Finally, we may consider conduct that occurred outside the child's presence, including conduct before the child's birth. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

In our May 9, 2019 opinion, we set forth a detailed factual background. Here, we recap only the facts that are relevant to an analysis of the endangering-conduct finding:

- Mother testified that when she was pregnant with Blake, Father yelled at her, pushed her up against a wall, and then held her down in the front yard. *B.W.*, 2019 WL 2041808, at *1.

- Mother said that Father had been violent towards her while Blake was present by verbally abusing her when Blake was only a few months old to a year old. *Id.*

- The record demonstrates that in 2015, Father was charged with aggravated assault with a deadly weapon and was placed on deferred-adjudication community supervision. *Id.* Mother testified that Father's criminal charge was a result of his assaulting his then-girlfriend. *Id.*

- Mother testified that Father's drug usage created a situation that had endangered Blake's physical and emotional well-being. *Id.* Mother explained that Father had anger issues and was very violent when he was

4

on drugs. *Id.* Mother testified that she had seen Father hit Paternal Grandmother on the back with a broomstick and that he had been verbally abusive to Paternal Grandmother and Paternal Grandfather. *Id.* at \*1 n.5.

- Mother testified that her concerns about Father's drug use were confirmed when his community supervision was revoked due to failed drug tests and he was adjudicated guilty of aggravated assault with a deadly weapon. *Id.* at \*2. The judgment reflects that Father was placed on deferred-adjudication community supervision in 2015; that the State filed a motion to adjudicate, alleging that Father had violated multiple conditions of his community supervision; that he pleaded true to the alleged violations; and that the trial court found the allegations to be true, adjudicated Father guilty of aggravated assault, and sentenced him to ten years' confinement. *Id.* The record reflects that Father's parole eligibility date is January 13, 2023. *Id.*

- Paternal Grandmother said that Father began using drugs at the end of high school and had used drugs off and on for eight years. *Id.* at \*3. Paternal Grandmother admitted that when Father was doing drugs, he would push her, yell at her, and scream at her and Paternal Grandfather. *Id.*

5

- Paternal Grandmother admitted that someone who had abused drugs and had committed aggravated assault with a deadly weapon was not a good, stable parent. *Id.* at *4. Paternal Grandmother could not guarantee that Father would stay clean after he is released from prison. *Id.*

- Paternal Grandfather admitted that he and Father had engaged in verbal altercations. *Id.*

- Paternal Uncle did not believe that it was a trait of a good father to use drugs in violation of a court order prohibiting him from using drugs. *Id.*

Additionally, the record reflects that in the Order in Suit to Modify Parent–Child Relationship rendered by the trial court on September 29, 2016, the trial court found that "[Father] has a history or pattern of committing family violence during the two-year period preceding or during the pendency of the suit." *Id.* at *6.

As demonstrated by the facts above, Father had a history of drug use, anger issues, and domestic violence, which culminated in a criminal conviction for aggravated assault with a deadly weapon. As a result of that conviction, Father was incarcerated at the time of the termination trial and was not eligible for parole until 2023. It is beyond doubt that violence and illicit drug use endanger a child's physical and emotional well-being. Father has repeatedly engaged in endangering conduct, and the factfinder could reasonably form a firm belief or conviction that Father may

6

engage in such conduct in the future. Thus, we conclude that this evidence is sufficient to allow the trial court as factfinder to determine that Father had engaged in conduct that endangered Blake's physical or emotional well-being. *See In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (recognizing parental drug use and abusive conduct by a family member may endanger a child's well-being under subsection (b)(1)(E)); *In re C.J.S.*, 383 S.W.3d 682, 689–90 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding evidence sufficient to support subsection (b)(1)(E) finding based on parent's positive drug tests, poor judgment, and lack of impulse control); *J.T.G.*, 121 S.W.3d at 131 (holding evidence legally sufficient to support endangerment findings because parent had a history of domestic violence, drug abuse, and criminal conduct). Accordingly, we overrule the portion of Father's second issue challenging the section 161.001(b)(1)(E) finding.

Having complied with the Texas Supreme Court's directive in *N.G.*, we again affirm the judgment terminating Father's parental rights to Blake. *See* 2019 WL 2147263, at *4; *see also In re C.M.-L.G.*, No. 14-16-00921-CV, 2017 WL 1719133, at *8–10, *13 (Tex. App.—Houston [14th Dist.] May 2, 2017, pet. denied) (mem. op.) (addressing (E) finding for collateral consequences purposes, holding evidence sufficient under that ground, and affirming entire judgment).

/s/ Dabney Bassel
Dabney Bassel
Justice

Delivered: June 6, 2019

7