# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00255-CV

**D. H., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 312,572-B, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## O P I N I O N

Appellant D.H. (Mother) appeals from the trial court's decree terminating her parental rights to her four children—son J.H., born in 2008; son N.H., born in 2009; daughter A.H., born in 2011; and daughter D.A.H., born in 2013.[1] In a single issue, Mother challenges the legal and factual sufficiency of the evidence supporting the district court's finding that she engaged in conduct or knowingly placed the children with someone who engaged in conduct that endangered the children's well-being. *See* Tex. Fam. Code § 161.001(b)(1)(E). For the reasons that follow, we affirm the trial court's decree of termination.

---

[1] The district court's decree also terminated the parental rights of the children's father, J.H., but he did not file a notice appeal and therefore is not a party to these appellate proceedings.

## BACKGROUND

On September 19, 2019, the Department received a report from staff at a local hospital of suspected medical neglect. D.A.H, who was six years old and has spina bifida, had been taken to the hospital by J.H. (Father) for an infection on her foot related to her paralysis, and the infection was so severe that bone was visible in multiple places. In addition, hospital staff reported that D.A.H. had been hospitalized for the same foot infection in June 2019 and that since being released, she had missed six doctor's appointments.

On September 23, 2019, the Department filed an original petition seeking conservatorship of the children and termination of Mother's and Father's parental rights. In the removal affidavit accompanying the petition, Department investigator Marnita Blanks summarized the family's previous involvement with the Department. In part, Blanks stated in the removal affidavit that in July 2016, the Department had sought and obtained a court order in Coryell County for removal of the children from Mother's and Father's care and that the Department initiated those proceedings after receiving a report that Mother had threatened suicide "while being under the influence of [methamphetamine] in the presence of the children." On August 16, 2017, the district court in Coryell County signed a final order granting primary managing conservatorship of the children to Father's parents and, after finding that appointment of Mother and Father as possessory conservators would not be in the children's best interest and that possession or access would endanger the children's physical or emotional welfare, denying Mother and Father possession and access to the children.[2]  *See* Tex. Fam. Code § 153.191 (requiring court to appoint parent as possessory conservator when not appointed managing

---

[2] On October 16, 2019, the district court signed an order transferring the case from Coryell County to Bell County and consolidating the case with this case.

2

conservator, "unless it finds that the appointment is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child"). Despite the 2017 final order, Blanks discovered that when Father took D.A.H. to the hospital, the children were living with him. Although Mother was not residing with Father and the children, she had recently begun visiting the children on weekends.

A final hearing before an associate judge was conducted on November 12, 2020. *See id.* § 201.201. At the conclusion of the hearing, the associate judge signed an order recommending termination of Mother's and Father's parental rights. Upon Mother's request, the district court conducted a de novo hearing. *See id.* § 201.2042. After the de novo hearing, the district court signed a de novo decree of termination. As to Mother, the district court found by clear and convincing evidence that Mother engaged in conduct or knowingly placed the children with someone who engaged in conduct that endangered the children's well-being and that termination of her parental rights was in the children's best interest.[3] *See id.* § 161.001(b)(1)(E), (2). The district court also appointed the Department as the children's managing conservator. *See id.* § 161.207.

On appeal, Mother does not challenge the district court's decision as to conservatorship or the court's finding that termination of her parental rights is in the children's best interest. *See In re J.A.J.*, 243 S.W.3d 611, 617 (Tex. 2007) (concluding that conservatorship and termination of parental rights are distinct issues and that each must be separately challenged

---

[3] The associate judge found that termination of Mother's parental rights was also warranted under subsections (D) and (O). *See* Tex. Fam. Code § 161.001(b)(1)(D), (O). At the conclusion of the de novo hearing, however, the attorney for the Department affirmatively stated on the record that the Department was abandoning those alternative statutory grounds and that it was proceeding solely based on subsection (E). Accordingly, the district court did not adopt the associate judge's findings with respect to subsections (D) and (O).

on appeal). Instead, in one issue on appeal, Mother challenges the sufficiency of the evidence supporting the district court's determination that she engaged in acts or omissions warranting termination under the Family Code, Section 161.001(b)(1), subsection (E).

## STANDARD OF REVIEW

"While parental rights are of constitutional magnitude, they are not absolute." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). To terminate a parent-child relationship, the Department must prove by clear and convincing evidence that (1) the parent's acts or omissions constitute at least one of the enumerated statutory grounds for termination and (2) it is in the child's best interest to terminate the parent's rights. Tex. Fam. Code § 161.001(b)(1), (2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). "Due process compels this heightened standard because terminating the parent-child relationship imposes permanent, irrevocable consequences." *In re J.A.J.*, 243 S.W.3d at 616. On appeal, we apply a standard of review that reflects this heightened standard of proof. *See In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). We are also mindful, however, that we must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of the witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

When evaluating the legal sufficiency of the evidence, we cannot "ignore undisputed evidence contrary to the finding," but must otherwise look at the evidence in the light most favorable to the judgment, which means we must "assume the factfinder resolved disputed

4

facts in favor of the finding," *In re A.C.*, 560 S.W.3d at 630-31, and "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible," *In re J.F.C.*, 96 S.W.3d at 266. "Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could have formed a firm belief or conviction that the finding was true." *In re A.C.*, 560 S.W.3d at 631; *In re J.F.C.*, 96 S.W.3d at 266.

A factual-sufficiency review, in contrast, requires "weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *In re A.C.*, 560 S.W.3d at 631. The reviewing court must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*

## STATUTORY GROUNDS

A trial court may order termination of the parent-child relationship under subsection (E) if clear and convincing evidence establishes that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(E). The focus under subsection (E) is on the parent's conduct—including acts, omissions, or failures to act— and, more specifically, whether evidence exists that the child's physical or emotional well-being was endangered as a direct result of the parent's conduct. *A.S. v. Texas Dep't of Fam. & Protective Servs.*, 394 S.W.3d 703, 711 (Tex. App.—El Paso 2012, no pet.). Termination

5

under subsection (E) requires more than a single act or omission; instead, the evidence must demonstrate a "voluntary, deliberate, and conscious course of conduct" by the parent. *In re M.L.L.*, 573 S.W.3d 353, 364 (Tex. App.—El Paso 2019, no pet.); *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). Further, in evaluating whether the evidence supports a finding of endangerment under subsection (E), the factfinder may consider conduct that occurred both before and after the child was born, including conduct that occurred after the child was removed from her parent's custody. *M.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00531-CV, 2021 Tex. App. LEXIS 3310, at *16 (Tex. App.— Austin Apr. 30, 2021, no pet.) (mem. op.) (citing *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)).

In this context, a child is "endangered" if the child is exposed to loss or injury or if her emotional or physical health is jeopardized. *A.S.*, 394 S.W.3d at 711. Although endangerment means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987), it is not necessary to show that the conduct was directed at the child or that the child actually suffered injury, *In re S.R.*, 452 S.W.3d at 360. Moreover, the specific danger to the child's well-being may be inferred from parental misconduct alone. *Boyd*, 727 S.W.2d at 533; *A.C. v. Texas Dep't of Fam. & Protective Servs.*, 577 S.W.3d 689, 699 (Tex. App.—Austin 2019, pet. denied). As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re J.O.A.*, 283 S.W.3d at 336. The failure to provide or obtain appropriate medical care for a child can constitute endangering conduct under subsection (E). *In re J.D.G.*, 570 S.W.3d 839, 852 (Tex. App.— Houston [1st Dist.] 2018, pet. denied). In addition, a parent's drug use may support termination

6

under subsection (E) because it exposes the child to the possibility that the parent may be impaired or imprisoned. *In re J.O.A.*, 283 S.W.3d at 345; *M.D.*, 2021 Tex. App. LEXIS 3310, at *25; *Walker v. Texas Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

## DISCUSSION

On appeal, Mother asserts that the district court's finding of endangering conduct must be reversed because subsection (E) requires proof of endangerment and that the Department failed to present any evidence that the children were endangered as a direct result of her conduct. *See A.S.*, 394 S.W.3d at 711. Mother points out that the Department's evidence primarily concerned conduct that occurred after the children were removed from her custody and care in August 2017. Consequently, in Mother's view, the evidence is legally and factually insufficient to support the trial court's finding because "the Department did not even attempt to show any causal connection" between her conduct and any "actual harm to the children."

In support of her argument, Mother relies on an opinion from the Fourteenth Court of Appeals, *In re L.C.L.*, 599 S.W.3d 79 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (en banc). In that case, one of the issues before our sister court was whether it could uphold the trial court's endangerment findings under subsections (D) and (E) based solely on evidence that the parent had "tested positive for drugs both initially and throughout the proceedings," despite the absence of any evidence "connecting [the parent's] positive drug test to any activity that endangered her children." *Id.* at 84. In concluding that it could not, the court of appeals noted its earlier cases holding that a parent's endangering conduct need not be directed at the child or cause actual injury or threat of injury and that subsection (E) "does not

7

require a causal connection between the parent's misconduct and actual harm to the child resulting from that misconduct." *Id.* at 85. However, the court of appeals went on to state, "a plain reading of the statute itself does not support this interpretation," and the "Family Code expressly contemplates use of a controlled substance by a parent 'in a manner that endangered the health and safety of the child.'" *Id.* (quoting Tex. Fam. Code § 161.001(b)(1)(P)). The court of appeals then rejected what it characterized as the dissent's "absurd conclusion"—that "a parent's drug use alone, without proof of any causal connection to endangering their children's welfare, is enough to justify terminating a parent-child relationship." *Id*. at 86. The court of appeals determined that, instead, a "plain language reading of the statute requires a causal connection between [a parent's] drug use and the alleged endangerment."[4] *Id.* at 84. Because the Department had failed to "prove a causal link between Mother's drug use and the alleged endangerment," our sister court held that the evidence was legally insufficient to support termination of the mother's parental rights under subsections (D) and (E). *Id.* at 86.

Although we agree that "a finding of endangerment based on drug use alone is not automatic," *see In re C.V.L*, 591 S.W.3d 734, 751 (Tex. App.—Dallas 2019, pet. denied), to the extent the court in *L.C.L.* held, as Mother contends, that direct evidence is required to show a causal link between drug use and endangerment, we disagree. *See M.D.*, 2021 WL 1704258, at *8 (holding that drug use and drug-related criminal activity may support termination under

---

[4] Several other courts of appeals have since cited *L.C.L.* for the proposition that a finding of endangerment requires evidence of a causal connection between the parent's drug use and some other endangering conduct. *In re C.L.E.E.G.*, No. 13-20-00387-CV, 2021 Tex. App. LEXIS 917, at *20 (Tex. App.—Corpus Christi-Edinburg Feb. 4, 2021, no pet.) (mem. op.) (concluding that evidence was legally insufficient "when there is no evidence of a causal connection between the parent's drug use and endangering conduct"); *see also In re C.R.*, Nos. 07-20-00314-CV, 07-20-00316-CV, 2021 Tex. App. LEXIS 1286, at *7-8 (Tex. App.—Amarillo Feb. 23, 2021, pet. denied) (mem. op.) ("Evidence of drug use on its own is not sufficient to show endangerment unless it is causally connected to conduct endangering a child.").

8

subsection (E) "because it exposes the child to the possibility that the parent may be impaired or imprisoned," and citing *L.C.L.* under "but see" signal); *see also S.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00191-CV, 2021 Tex. App. LEXIS 7002, at *19 (Tex. App.—Austin Aug. 25, 2021, no pet.) (mem. op.) (noting that *M.D.* had cited *L.C.L.* under "but see" signal and had not followed it); *S.R. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00142-CV, 2021 Tex. App. LEXIS 6392, at *12 n.3 (Tex. App.—Austin Aug. 6, 2021, no pet.) (mem. op.) (same).

Endangerment does not have to be established as an independent proposition but may instead be inferred from parental misconduct. *Boyd*, 727 S.W.2d 531, 533; *A.C.*, 577 S.W.3d at 699. As a result, a court's consideration of allegations of endangerment is a fact-intensive process and depends on the specific circumstances of the case. In some circumstances, a parent's drug use might be so pervasive or serious that the factfinder could reasonably infer that the drug use is endangering, despite a lack of evidence showing that the drug use caused some other endangering activity or even that the drug use occurred while the children were in the parent's direct care. *See, e.g.*, *S.G. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00085-CV, 2021 Tex. App. LEXIS 6384, at *38 (Tex. App.—Austin Aug. 6, 2021, no pet.) (mem. op.) (noting that "Father's continuing to test positive for illegal drugs during the first year of the case supported a finding by the district court that Father's illegal drug use had been an ongoing habit that created an endangering environment for the children even before Child 3 had been injured"); *In re M.A.J.*, 612 S.W.3d 398, 407-408 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (concluding that evidence of positive drugs tests after Department received referral that parent used narcotics was sufficient to support finding of endangerment under subsection (E)). In addition, this and numerous other courts of appeals have recognized that a

parent's decision to use illegal drugs while the termination suit is pending, and the parent is at risk of losing her child, may support a finding of endangering conduct under subsection (E).[5] *See, e.g.*, *S.R.*, 2021 Tex. App. LEXIS 6392, at *3-4; *In re C.V.L*, 591 S.W.3d at 751; *In re J.S.*, 584 S.W.3d 622, 636 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *In re S.R.*, 452 S.W.3d at 361-62; *In re M.E.-M.N.*, 342 S.W.3d at 263; *see also In re L.C.L.*, 599 S.W.3d at 96-97 (Wise, J., dissenting) (collecting authorities and noting that majority had "overrule[d] almost a decade of authority from [that] court" and created conflict with other courts of appeals). This is because a parent's ongoing drug use jeopardizes the parent-child relationship and subjects the child to a life of uncertainty and instability. *See In re M.T.*, Nos. 05-20-00450-CV, 05-20-00451-CV, 2020 Tex. App. LEXIS 7956, at *16 (Tex. App.—Dallas Oct. 5, 2020, no pet.) (mem. op.) ("Mother's continued drug use during the pendency of this case endangered the children's well-being by prolonging and exacerbating the children's instability.").

At the de novo hearing, the Department offered and the district court admitted into evidence the removal affidavit from Blanks, photos of D.A.H.'s infected foot, Mother's family-service plan, the results of drug tests submitted by Mother during the pendency of the suit, and the results from a home study conducted on Mother's mother. In addition, the court heard testimony from Department caseworker Jocelyn Holdburg and from Mother.

---

[5] In an opinion concurring with the Texas Supreme Court's decision to deny the Department's petition for review in *L.C.L.*, Justice Lehrmann noted that there is "an apparent conflict among the courts of appeals regarding the connection between drug use and endangerment." *In re L.C.L.*, __ S.W. 3d __, No. 20-0432, 2021 WL 2603699, at *2 (Tex. June 25, 2021) (Lehrmann, J., concurring). She also noted that the Fourteenth Court of Appeals's position that "mere drug use" cannot support an endangerment finding was akin to a position recently taken by a parent who argued that his parental rights had been impermissibly terminated due to "mere imprisonment." *Id.* (citing *In re J.F.-G.*, 627 S.W.3d 304, 316 (Tex. 2021)). As Justice Lehrmann explained, the Texas Supreme Court rejected the parent's appellate argument in that case, and "just as imprisonment cannot be viewed in a vacuum, neither can a parent's drug use." *Id.* at *5.

Holdburg testified that at the time the Department sought removal, it was concerned about Mother's "ongoing drug use and mental health" based on the fact that "drug use [was] something that had caused the children to not be reunified during the 2017 Coryell case." According to Holdburg's testimony, Mother's family-service plan required her to submit to drug tests; the Department informed Mother that a missed test would be considered a positive test; Mother failed to submit to approximately fifty drug tests; and Mother tested positive for methamphetamine on five tests, the only drug tests that she submitted to during the eighteen-month case. In addition, shortly before the final hearing, Mother requested that she be allowed to take a hair-follicle test to demonstrate that she had not being using drugs. Although the request was approved, Mother failed to appear for the hair-follicle test. Holdburg also testified that Mother was required under her family-service plan to attend therapy but was "unsuccessfully" discharged from therapy after six months, due to a reported lack of progress, and that Mother failed to receive outpatient treatment services for her drug use, as recommended by her Outreach Screening Assessment Referral (OSAR).

In addition, caseworker Holdburg testified that the Department was concerned that Mother had failed to seek medical care for D.A.H. Holdburg testified that when the Department received the hospital's report of suspected medical neglect, Mother had been visiting the children on weekends and that she would have seen the severity and worsening of D.A.H.'s foot during those visits but did not take D.A.H. to the hospital. Holdburg admitted that she was not sure of the specific dates that Mother had visited with D.A.H. but explained that D.A.H. was initially seen by the hospital for the infection in May 2019 and that the infection had gotten much worse by that September. Holdburg testified that the Department investigator questioned Mother about her failure to seek medical care for D.A.H. and that Mother's response was that the people

11

who were caring for D.A.H. "were doing what they needed to do to care for her" and that "they had given her instructions on how to care for the foot, and she felt like she was doing what she needed to do."

In her testimony, Mother acknowledged that she missed a "whole bunch" of drug tests but explained that she did not have transportation and that if she had to walk to the testing site, it would take longer than an hour round trip. Mother also admitted that she tested positive several times during the pendency of the case, including on her last drug test in June 2020, when she tested positive at a level 350 times the threshold necessary for a positive methamphetamine result. Nevertheless, according to Mother's testimony, she had stopped using drugs four months before the hearing and believed she could remain sober and care for her children despite not having received any in-patient or out-patient rehabilitation treatment. When asked why she did not complete outpatient rehabilitation services, Mother explained that Holdburg had suggested that she complete inpatient rehabilitation services instead and that she was currently on a waiting list for inpatient rehabilitation and was still willing to go. When asked why she did not show up for the recent hair-follicle test that she had requested, Mother explained that she did not know that she only had a three-day timeframe to take the test.

Finally, when questioned about D.A.H.'s infection, Mother acknowledged that she had seen D.A.H.'s injuries a few weeks before she was hospitalized but did not report the injuries because she "didn't know that [she] had to, because they were getting care for it." Mother explained that she found out about the injuries when Father gave D.A.H.'s medication to her with directions on "how to apply the medication and wrap the wound." According to Mother, she was under the impression that D.A.H. was being taken to her appointments and that "she was getting the proper medication that she needed."

12

Based on this record, we conclude that the undisputed evidence in this case establishes that (1) during the pendency of this case, Mother tested positive for methamphetamine five times and failed to submit to approximately fifty drug tests; (2) one drug test revealed a level of methamphetamine that the Department considered "very concerning"; (3) the children were initially removed from Mother's care in 2016, after she threatened suicide; (4) she ultimately lost conservatorship of and access to her children in 2017; and (5) she had seen the infection on D.A.H.'s foot just a few weeks before the Department received the report from hospital staff. In addition, assuming that the district court resolved disputed facts in favor of the finding of endangerment and that it disregarded all evidence that a reasonable factfinder could have disbelieved, we conclude that evidence also shows that (1) the children were removed from Mother's care in 2016 due, in part, to suspected drug use; (2) during the pendency of this case, Mother failed to show for drug tests because those results would have been positive; (3) she failed, without sufficient justification, to complete outpatient rehabilitation treatment; (4) she was unsuccessfully discharged from therapy due to lack of progress; and (5) she failed, without sufficient justification, to obtain medical treatment for D.A.H.'s injuries. From this, the district court could have reasonably inferred that Mother has a serious and on-going problem with methamphetamine, which began before the children were removed from her custody and continued afterwards, and that this drug use jeopardized her children's emotional or physical well-being. In addition, the district court could have reasonably determined that Mother neglected D.A.H.'s medical needs.

After considering all the evidence in the light most favorable to the district court's finding, along with any undisputed evidence contrary to the finding under subsection (E), we conclude that a reasonable factfinder could have formed a firm belief or conviction that Mother

13

engaged in a course of conduct that endangered her children's physical or emotional well-being. *See* Tex. Fam. Code § 161.001(b)(1)(E); *In re A.C.*, 560 S.W.3d at 631. In addition, in view of the entire record, we conclude that the disputed evidence is not so significant that the district court, as factfinder, could not have formed a firm belief or conviction that Mother engaged in conduct endangering to her children. *See In re A.C.*, 560 S.W.3d at 631. Consequently, the evidence is legally and factually sufficient to support the district court's finding that termination of Mother's parental rights was warranted under subsection (E). We overrule Mother's issue on appeal.

## CONCLUSION

We affirm the district court's de novo decree terminating Mother's parental rights.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly
  Concurring Opinion by Justice Triana

Affirmed

Filed:  November 3, 2021

14