

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00212-CV

_____

IN THE INTEREST OF C.B., C.B., AND K.B., CHILDREN

---

On Appeal from the 97th District Court
Archer County, Texas
Trial Court No. 2018-0164A-CV

---

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

C.B. (Father) filed a petition to terminate the parental rights of K.B. (Mother) to their children, Craig, Curtis, and Kimberly.[1] Following a bench trial, the trial court terminated Mother's rights to the children. Mother appeals that decision, complaining in one issue that the evidence was factually insufficient to sustain the trial court's finding that termination would be in the children's best interest.

We will affirm.

## II. Background

At the time of the bench trial, Mother was incarcerated. Her jail history included a six-month period from November 2019 to April 2020, and a three-month period from November 2020 to February 2021. Mother's incarceration began in June 2021. Mother received a one-year sentence for child endangerment[2] in June 2021 and a four-year sentence for credit card abuse in August 2021. She denied having committed the credit card offense, and she minimized her participation in the actions that resulted in her child endangerment conviction. Mother's maximum release date is in May 2025. She failed to attain parole in October 2021. But there is another

---

[1]As this is a parental-rights termination case, we use aliases to refer to the children, parents, and grandmother involved. *See* Tex. R. App. P. 9.8(b)(2).

[2]Specifically, Mother's ex-boyfriend spanked Kimberly on her bottom, hard enough to cause bruising. Mother apparently knew about this and failed to report it—she pleaded guilty to "engag[ing] in conduct, by omission, that placed [Kimberly] in imminent danger of death, bodily injury, or physical or mental impairment."

possible parole date in February 2023. There is, obviously, no guarantee that Mother will be released in February 2023.

Earlier, in October 2018, Mother's three children were removed from her care. A year later, a final order was entered which placed the children with Father. Except for a visit in November 2019, Mother had not seen her children since the entry of that order. She also had paid no child support since that date, accounting for nearly $8,000 in arrears. Since the entry of the support order, Mother had been employed by a trucking company and later worked at a deli. During this time, Mother had been aware of her obligation to pay child support directly to the Attorney General's office.

Father testified that he lived with his fiancée. He described his fiancée's relationship with his three children as "[e]xceptional." According to Father, his fiancée plans to adopt the children in the future. All three children were doing well in school, and Kimberly was attending weekly speech and occupational therapy sessions.

Mother testified that her trucking company job resulted in her incarceration as she violated her probation by working outside the county. She also said that it was difficult to pay child support during her periods of employment because she used her money for gas and motel rooms. However, Mother also admitted that she failed to support her children in accordance with her ability.

Mother also testified that she enrolled in horticulture classes in prison and plans to acquire a forklift operation license. In addition, she has taken classes in parenting and health.

Finally, Mother's mother ("Donna") also testified. Donna said that Father had blocked her on Facebook, that he didn't answer her calls or text messages, and that she had been otherwise unable to contact him. She testified that she would have delivered cards or letters from Mother to the children if she had been able to get in contact with Father. Donna said that she wants to be a part of her grandchildren's lives and that the children's separation from Mother had been "detrimental."

After hearing the evidence, the trial court found that Mother failed to support her children in accordance with her ability during a period of one year ending within six months of the date of the filing of Father's petition and that she knowingly engaged in criminal conduct resulting in her confinement for not less than two years from the date of the petition's filing. The trial court also found that termination was in the best interest of the children.

### III.  Best Interest

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). In determining whether evidence is sufficient to support a best interest finding, we review the entire record. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *Id.* at 249; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We

4

also consider the evidence in light of nonexclusive factors that the factfinder may apply in determining the child's best interest:

- the child's desires;

- the child's emotional and physical needs now and in the future;

- the emotional and physical danger to the child now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist these individuals to promote the child's best interest;

- the plans for the child by these individuals or by the agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions that may indicate that the existing parent–child relationship is not a proper one; and

- the parent's excuse, if any, for the acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we consider, among other evidence, the *Holley* factors"); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012). These factors do not form an exhaustive list, and some factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may suffice in a particular case to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of paltry evidence relevant to each factor will not

5

support such a finding. *Id.*; *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *4 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.).

## A. Emotional and Physical Needs

At the time of the bench trial, the children were living with Father and his fiancée. The youngest child, Kimberly, was in kindergarten and had special needs. Father was taking Kimberly to speech therapy and occupational therapy once a week. Craig and Curtis, then a fifth-grader and third-grader, respectively, were doing well in school, and both played baseball. The children were attached to Father's fiancée, who had plans to adopt the children.

By contrast, Mother had not physically visited with the children since 2019, nor had she paid any child support. Even Mother admitted that the children were in "a good place." The trial court was entitled to view this factor as supporting a best interest finding.

## B. Danger to the Children Now and in the Future

Mother pleaded guilty to endangering a child in 2021. According to Mother's testimony, her ex-boyfriend spanked her youngest daughter hard enough that it left bruises. The charges resulted from Mother's failure to report the abuse. Obviously, a conviction for endangering one's own child should weigh heavily against a parent in evaluating whether she might be a danger to her children now and in the future. *See In re H.R.M.*, No. 07-18-00430-CV, 2019 WL 1321226, at *4 (Tex. App.—Amarillo Mar. 22, 2019, pet. denied) (mem. op.) (holding that criminal conviction for

endangering a child strongly supported trial court's best interest finding).  Further, the trial court was entitled to infer from Mother's past conduct that she might commit similar endangering acts in the future.  *See A.S. v. Tex. Dep't of Fam. & Protective Servs.*, 394 SW.3d 703, 714 (Tex. App.—El Paso 2012, no pet.); *see also In re A.J.M.*, No. 04-17-00681-CV, 2018 WL 1511824, at *6 (Tex. App.—San Antonio Mar. 28, 2018, pet. denied) (holding that father's "criminal conduct is clearly evidence of his unwillingness to protect A.J.M. and to put A.J.M.'s needs above his own destructive life choices").

This factor supports the trial court's finding that termination was in the children's best interest.

## C.  Stability

Children need long-term safety and stability; providing for a child's physical and emotional needs is of paramount importance.  *See* Tex. Fam. Code Ann. § 263.307(a) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest.").  Mother argues that the record contains scant evidence regarding the stability of Father's home.  But there was enough for the trial court to conclude that Father's home appeared more stable than what Mother could offer.  Father was employed and had a home large enough to accommodate the children.  As previously noted, the children were regularly attending school, Father made sure they attended their appointments, and they lived with

Father's fiancée who, according to Father, has an "[e]xceptional" relationship with his children.

Mother, by contrast, was incarcerated. Her past conduct does not bode well for her ability to provide a stable home for the children, and nothing in the record indicates that Mother will have a future ability to provide a stable home. *See In re V.V.*, 349 S.W.3d 548, 558 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (en banc op. on reh'g) (opining that a parent's frequent incarceration leaves child without a stable environment). The trial court was entitled to find that Mother's inability to provide a stable home for the children supported the view that termination of her rights was in the children's best interest.

**D. Acts or Omissions Indicating Whether the Parent–Child Relationship is a Proper One, and Any Excuses for Those Acts or Omissions**

As to whether Mother's relationship with her children is a proper one, we note that Mother's history of incarceration coupled with a general lack of interaction with the children supports the trial court's finding that reunification with Mother would not be in the children's best interest. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.— San Antonio 2020, pet. denied) (stating that absence during early years of a child's life due to incarceration threatens child's emotional well-being and indicates that the parent's relationship with the child is not a proper one). In addition, Mother's failure to exercise visitation rights prior to her incarceration and her failure to pay any child support (even before being sent to jail) is probative of the fact that her relationship

8

with the children is not a proper one. *See Dowell v. Dowell*, 276 S.W.3d 17, 22 (Tex. App.—El Paso 2008, no pet.).

Mother's excuses for failing to visit and remit child support are by and large tied to her intermittent periods of incarceration. Mother, however, fails to explain why she did not persevere in visiting the children or why she failed to pay *any* child support during the months when she was out of prison. In any event, it is difficult to excuse Mother for her failings based on her time in jail when her incarceration was due to her own choices. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (considering parent's history of irresponsible choices in best interest determination).

## IV. Conclusion

Having overruled Mother's challenge to the best interest finding, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: October 27, 2022

9